**WM. KELLY NASH (4888)**
  *wmkellynash@aol.com*
**JORDAN K. CAMERON (12051)**
  *jcameron@djplaw.com*
**DURHAM, JONES & PINEGAR, P.C.**
River View Plaza, Suite 300
4844 North 300 West
Provo, Utah 84604
Telephone: (801) 375-6600
Fax: (801) 375-3865

**Attorneys for Plaintiff ZooBuh, Inc.**

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ZOOBUH, INC., a Utah Corporation<br><br>Plaintiff,<br><br>vs.<br><br>ONE TECHNOLOGIES, L.P.; DOES 1-40,<br><br>Defendants. | **COMPLAINT**<br><br>**(JURY DEMAND)**<br><br><br>Case No.: 2:14cv00342 BSJ<br><br>Judge Bruce S. Jenkins |

COMES NOW Plaintiff ZooBuh, Inc. ("ZooBuh"), and complains and alleges the following:

PARTIES, JURISDICTION AND VENUE

1. Plaintiff ZooBuh ("**ZooBuh**"), is a Utah Corporation with its principal place of business in Cedar Hills, Utah, and at all relevant times hereto was duly registered and licensed to do business in the State of Utah.

2. Defendant One Technologies, L.P ("**One Technologies**") is Texas limited partnership.

3.     On information and belief DOES 1-40 are individuals and companies doing business in association with the above named-defendant, either as shareholders, officers, members, affiliates and/or publishers, some or all or all of whom are alter egos of the Defendant.

4.     ZooBuh presently does not have sufficient information regarding the names and identities of the Doe Defendants. On information and belief, each of the Doe Defendants participated in, ratified, endorsed, facilitated, or was otherwise involved in the acts complained of, and that each has liability for such acts. ZooBuh will amend this Complaint if and when the identities of such persons or entities and the scope of their actions become known.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), for violations of the 15 U.S.C. §7701 *et seq.* (CAN-SPAM Act of 2003), and pursuant to 15 U.S.C. § 7706(g)(1) (original jurisdiction) for cases involving a civil action by an internet access service adversely affected by a violation of 15 U.S.C. §7704(a)(1), 15 U.S.C. §7704(b), or 15 U.S.C. § 7704(d), or a pattern and practice that violates subparagraphs (2), (3), (4), and/or (5) of 15 U.S.C. § 7704(a)

6.     This Court has personal jurisdiction over the Defendants because the Defendants, and each of them, are residents of the state of Utah, are businesses organized and existing under the laws of the state of Utah, and/or because Defendants have purposefully availed themselves of the privileges of conducting commercial activity in the forum state, and the exercise of jurisdiction is reasonable since Defendants should have know that they would be subject to the jurisdiction and laws of the forum state when they sent, or had commercial emails sent to customers of an email service provider located in Utah.

7. Venue is proper pursuant to 18 U.S.C. §1391, as a substantial part of the unlawful actions by the Defendants, and each of them, occurred in this judicial district.

GENERAL ALLEGATIONS

8. During all times relevant hereto, and through the date of the filing of this Complaint, ZooBuh was a corporation duly existing under the laws of the State of Utah which provided access to, and enabled and hosted email, chat, and blog services for private parties.

9. ZooBuh was first formed in 2002, prior to the existence of the CAN-SPAM Act.

10. ZooBuh is a widely and well-recognized service provider of email, blog, and chat services.

11. ZooBuh has been featured in articles published in *PC Advisor*, *PC Magazine*, *Tech World*, *The Guardian*, *Find it Quick Internet Guide*, *Yahoo's Associated Content* and has been mentioned in the following books: How to Protect Your Children on the Internet, by Gregory S. Smith and CyberSafety, by Ken Knapton. ZooBuh has also been mentioned and/or featured on KSL News' Nanny Radio Show and WBTV.

12. ZooBuh is a bona fide Internet Access Service ("IAS") as defined under 15 U.S.C. §7702(11) and 47 U.S.C. §231(e)(4), and as previously decided by this Court in the matter of *ZooBuh v. Better Broadcasting, et al.*, Case No. 2:11CV00516-DN ("**Better Broadcasting**") wherein the Court stated "ZooBuh is a bona fide Internet access service and satisfies the first part of the standing test under the CAN–SPAM Act." *Better Broadcasting*, 2013 WL 2407669, *2.

13. ZooBuh has customers in all 50 states and in 27 different countries.

14. ZooBuh services approximately 44,000 customer accounts.

15. ZooBuh owns all the servers, routers, and switches on its network through which it hosts and provides its internet access services for its customers.

16. ZooBuh currently runs it services on a network of 18 servers, many of which would be completely unnecessary but for the continuous onslaught of unlawful commercial emails (more commonly known as SPAM) sent to ZooBuh's servers.

17. ZooBuh has an expansive network and infrastructure, which it has had to consistently update, upgrade and augment in order to combat ongoing SPAM problems.

18. Every ZooBuh email account is registered, hosted and serviced though ZooBuh's own hardware.

19. ZooBuh also provides each of its customers with their own web-based portal through which they access their selected web based services (e.g., email, blogs, chat, etc.).

20. ZooBuh designed, created, and controls the web-based portal.

21. ZooBuh stores the routers, switches, and servers in a leased office space which offers server rack space, redundant Internet connections, physical security, and climate controls.

22. ZooBuh has sole ownership of all the hardware, complete and uninhibited access to the hardware, and sole physical control over the hardware.

23. The accounts hosted and served by ZooBuh include email accounts owned by third-party customers of ZooBuh, and also include email accounts owned by ZooBuh.

24. On information and belief, none of the owners of the email addresses in question opted-in or subscribed to receive commercial emails from the Defendants and/or about the Defendants' products, services, or websites.

25. Beginning in early 2011, One Technologies, either directly or through its agents (i.e., DOES) began to transmit commercial emails advertising its services and website to ZooBuh customers.

26. ZooBuh identified thousands of these emails as violating various provisions of the CAN-SPAM Act, specifically, 15 USC § 7704(a)(1), (a)(2), and (a)(4).

27. On or about September 8, 2011, ZooBuh sent a cease and desist letter to One Technologies.

28. In or about December 2011, ZooBuh, through its counsel, sent One Technologies a detailed analysis of each of the CAN-SPAM violations in the emails as well as copies of emails themselves.

29. The claims were resolved out of court.

30. Shortly thereafter, beginning in or around late 2012, One Technologies again began to transmit commercial emails to ZooBuh customers.

31. Again, ZooBuh identified a significant number of emails containing the same types of CAN-SPAM violations of which ZooBuh had already notified One Technologies in December 2011.

32. Again, in or about February 2013, ZooBuh sent One Technologies a detailed analysis of each of the CAN-SPAM violations in the new emails as well as copies of the emails themselves.

33. The claims were resolved out of court.

34. Beginning in or around March 2014, and to the date of this Complaint, One Technologies has again spammed ZooBuh's customers with approximately 7,500 commercial emails ("**Subject Emails**").

35. As set forth in more detail herein, many of the Subject Emails contain CAN-SPAM violations.

36. The violations are of the same type of which ZooBuh has previously notified One Technologies on at least two separate occasions.

37. The Subject Emails were sent and/or initiated by the One Technologies and/or one or more DOES.

38. The Subject Emails contributed, and continue to contribute, to an overall SPAM problem which the Court recognized in *Better Broadcasting* satisfied the second part of the standing test under CAN-SPAM for ZooBuh.

39. The emails from Defendants appear to be continuing on a daily basis.

40. In *Better Broadcasting*, the Court stated "the harm ZooBuh . . . continues to suffer, as the result of its collective SPAM problem is much more significant than the mere annoyance of having to deal with SPAM or the process of dealing with SPAM in the ordinary course of business (i.e., installing a spam filter to flag and discard spam) . . . . ZooBuh is adversely affected by a collective spam problem, which includes the emails in question, and . . . the second part of the standing test is satisfied." *Better Broadcasting* at *4.

41. Defendant One Technologies is responsible for each of the Subject Emails and is the "Sender" the email messages as its product, service, and/or website is advertised in the email messages, and as it either transmitted or procured the transmission of the emails in question.

42. Defendant's actions satisfy the definition of "Procure" in 15 U.S.C. § 7706(g)(2) because it has been on notice, and has had actual knowledge, since December 2011, that emails advertising its websites and services are being sent in violation of the CAN-SPAM Act, and specifically, that such emails are being sent to ZooBuh customers.

43. Each of the Subject Emails were sent to people under the age of 18.

44. On information and belief, various of the DOES 1-100, are "Initiators" and/or "Senders" of the Subject Emails collectively, as each of them, in some way, benefitted from the advertising in the messages and/or initiated or procured the emails in question.

45. Each of the Subject Emails is a commercial message and contains commercial content.

46. The Subject Emails, and each of them, were received by ZooBuh on its mail servers located in Utah.

47. In *Better Broadcasting*, the Court determined that ZooBuh has standing to pursue CAN-SPAM claims. Specifically, the Court stated, "the harm ZooBuh suffered, and continues to suffer, as the result of its collective SPAM problem is much more significant than the mere annoyance of having to deal with SPAM or the process of dealing with SPAM in the ordinary course of business (i.e., installing a spam filter to flag and discard spam). The harm ZooBuh suffered, and continues to suffer, is manifested in financial expense and burden; lost time; lost profitability; decreases in the life span of ZooBuh's hardware; server and bandwidth spikes; server crashes; and pre-mature hardware replacements. ZooBuh is adversely affected by a collective spam problem, which includes the emails in question . . . . Therefore, ZooBuh has

standing as defined by the CAN–SPAM Act to assert claims as a private party plaintiff." *Better Broadcasting* at *4.

48. As the result of the receipt of the emails message that violate CAN-SPAM, including the receipt of the Subject Emails at issue herein, which, in significant part, also violate CAN-SPAM, ZooBuh has suffered harm in the form of the following: financial expense and burden; lost time; lost profitability; decreases in the life span of ZooBuh's hardware; server and bandwidth spikes; server crashes; and pre-mature hardware replacements.

49. In order to service ZooBuh's customers, ZooBuh has had to consistently increase the size and servicing capacity of its system, despite no significant growth to its customer base.

50. With each added server, ZooBuh also has had to increase its bandwidth in order to service the new space adequately.

51. Even with the additional servers and constant upgrades to the servers, ZooBuh consistently deals with server spikes and crashes, and the servers are pushed to capacity constantly, which significantly decreases the life span of the servers and is costly in power consumption.

52. During the time frame of the emails in question, ZooBuh has experienced significant harm in the form of server spikes, server crashes, bandwidth spikes, memory exhaustion, and unrecoverable hardware failure, all of which are attributable to its receipt of SPAM email, including the emails in question.

53. None of these spikes or crashes would have occurred but for the SPAM emails and the spikes and crashes occurred despite ZooBuh's taking significant precautionary measures, such as implementing and constantly updating SPAM filters.

54. For each individual email, including specifically the Subject Emails, ZooBuh had to expend man hours and work to identify the source of the email, to determine how and why the specific emails were able to circumvent and/or bypass preliminary filtering techniques, and ultimately to make the emails stop.  ZooBuh has hired an additional employee on a contract basis to assist with these efforts.

55. ZooBuh's business has been further hindered by SPAM as it has impeded ZooBuh's growth and profitability.

56. Additionally, ZooBuh, on a fairly regular basis, receives customer complaints attributable to SPAM.  In essence, the customers complain that their email is not being delivered and/or received promptly, and that the system runs slowly overall.  ZooBuh can state with certainty that the slowdown issues complained of are directly attributable to ZooBuh's receipt of the unlawful email.

57. The harm suffered by ZooBuh on a regular basis is much more significant than the mere annoyance of having to deal with SPAM or the process of dealing with SPAM in the ordinary course of business (i.e. installing a spam filter to flag and discard spam).

58. The harm ZooBuh suffers is manifested in significant financial expense and burden, significant loss of employee time, significant loss in profitability and ability to grow the company, significant decreases is the life span of ZooBuh's hardware, which ultimately will mean more spikes, more crashes, and pre-mature hardware replacements and more money.

59. Each of the emails in question violates multiple CAN-SPAM provisions.

60. The majority of emails received by ZooBuh, including the emails in question, violate the CAN-SPAM Act in one or more ways, and contributed to a larger SPAM problem.

## FIRST CAUSE OF ACTION
### CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)
(Against all Defendants)

61. Each of the previous paragraphs is realleged herein.

62. The CAN-SPAM Act makes it unlawful to send email messages that contain, or are accompanied by, materially false or materially misleading Header Information. 15 U.S.C. §7704(a)(1).

63. In *Better Broadcasting,* the Court determined that "where an email contains a generic 'from' name and is sent from a privacy-protected domain name, such that the recipient cannot identify the sender from the 'from' name or the publicly available WHOIS information, such is 'materially misleading' and is a violation" of 15 U.S.C. §7701(a)(1). *Better Broadcasting* at *6.

64. Approximately 500 of the Subject Emails contain a generic "from" name and was sent from a privacy-protected domain name, such that the ZooBuh could not identify the sender from the "from" name or the publicly available WHOIS information.

65. Accordingly, approximately 500 of the Subject Emails associated with Defendant One Technologies violate §7704(a)(1).

66. Accordingly, ZooBuh prays for relief in the amount of $100 per violation of 15 U.S.C § 7704(a)(1) pursuant to 15 U.S.C. § 7706(g)(3) for a total damage award of up to $50,000.

## SECOND CAUSE OF ACTION
### CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)(A)
(Against all Defendants)

67. Each of the previous paragraphs is realleged herein.

68.     The CAN-SPAM Act makes it unlawful to send email messages that contain, or are accompanied by, materially false or materially misleading Header Information.  15 U.S.C. §7704(a)(1).

69.     "Header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading."  15 U.S.C. § 7704(a)(1)(A).

70.     In *Better Broadcasting,* the Court determined that an email that originated from a sender domain registered with an ICANN compliant domain registrar who maintains an anti-spam policy, violates the law regardless of whether the email contains a header that is technically accurate.  *See Better Broadcasting* at *6-7.

71.     The Court specifically stated "in order to obtain the domain names used to send the emails in question, the Defendants represented to the domain registrars that the domain names would not be used for SPAM purposes.  However, the domain names were intended to be used, and were used, for SPAM purposes.  Consequently, the Defendants obtained the sender domains . . . under false and fraudulent pretenses in violation of §7704(a)(1)(A)."  *Id*. at *7.

72.     Here, approximately 7,300 of the Subject Emails in question originated from sender domains registered with ICANN compliant domain registrars.  As examples, Big Rock, eNOM, Network Solutions, Name Cheap.

73.     Each of these registrars with whom the sender domains for the Subject Emails were registered maintain anti-spam policies.

11

74. Each of the domains from which the Subject Emails were sent were registered for a purpose that violates that registrars' policy(ies) (i.e., for sending SPAM).

75. Approximately 7,300 of the Subject Emails contained sender domain names registered with an ICANN compliant domain registrars, each of which maintained an anti-spam policy; and that the domain names were registered for a purpose that violates that registrars' policies (i.e., for sending SPAM), all in violation of 15 U.S.C. §7704(a)(1)(A).

76. Accordingly, ZooBuh prays for relief in the amount of $100 per violation of 15 U.S.C § 7704(a)(1) pursuant to 15 U.S.C. § 7706(g)(3) for a total damage award of up to $730,000.

THIRD CAUSE OF ACTION
**CAN-SPAM ACT, 15 U.S.C. § 7704(a)(2)**
(Against all Defendants)

77. Each of the previous paragraphs is realleged herein.

78. The CAN-SPAM Act makes it unlawful for any person to "initiate the transmission to a protected computer of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." 15 U.S.C. § 7704(a)(2).

79. Many of the emails in question contain subject headings designed to perpetuate the Defendant's fraudulent marketing scheme identified above. Specifically, the subject headings are misleading in violation of 15 U.S.C. § 7704(a)(2) by: 1) creating the impression that a relationship exists between the sender and the recipient; 2) creating the impression that the

recipient must respond to an urgent message; 3) calling the recipient by first name in order to create the impression that a previous relationship exists; 4) failing to provide any indication of what the email is about.

80. Approximately 832 Subject Emails violate §7704(a)(2) in that the Subject Heading was misleading or likely to mislead a recipient about a material fact regarding the contents or subject matter of the email message.

81. The number of the Subject Email that contain violations of 15 U.S.C. § 7704(a)(2) demonstrates that the Defendants engaged in a pattern or practice of violating this provision.

82. Accordingly, ZooBuh prays for relief in the amount of $25 per violation of 15 U.S.C § 7704(a)(2) pursuant to 15 U.S.C. § 7706(g)(3) for a total damage award of not less than $20,800.

FOURTH CAUSE OF ACTION
**CAN-SPAM Act 15 U.S.C. §7704(a)(4)**
(Against all Defendants)

83. Each of the previous paragraphs is realleged herein.

84. The CAN-SPAM Act makes it unlawful for the Sender, or anyone acting on the Sender's behalf, to transmit a commercial message to a recipient at any point after 10 days from the date the recipient opted out to receive commercial messages.  *See* 15 U.S.C. §7704(a)(4).

85. ZooBuh's Terms and Conditions vest it with authority to opt-out from receiving commercial email on behalf of its customers.

86. In September 2011, ZooBuh sent One Technologies a Cease and Desist letter through which it opted-out from receiving any commercial emails for any and all recipient with the @zoobuh.com email address.

87. Since March 2014, One Technologies has transmitted approximately 7,500 commercial emails to ZooBuh's customers.

88. Each of these emails was transmitted after ZooBuh has opted-out on behalf of its customers.

89. Accordingly, ZooBuh prays for relief in the amount of $25 per violation of 15 U.S.C § 7704(a)(4) pursuant to 15 U.S.C. § 7706(g)(3) for a total damage award of up to $187,500.

FIFTH CAUSE OF ACTION
**Aggravated Damages – CAN-SPAM Act 15 U.S.C §7706(g)(3)(C)**
(Against all Defendants)

90. Each of the previous paragraphs is realleged herein.

91. On information and belief, each of the Defendants committed the violations set forth above willfully and knowingly; or, in the alternative, each of the Defendant's unlawful activity included one or more of the aggravated violations set forth in 15 U.S.C. § 7704(b).

92. Specifically, the Defendants sent the Subject Emails to ZooBuh customers after ZooBuh had put One Technologies on notice that it was sending emails in violation of the CAN-SPAM Act to its customers in or around December 2011 and again in or around February 2013.

93. One Technologies has knowingly continued to send commercial emails in violation of the CAN-SPAM Act to ZooBuh customers despite ZooBuh's repeated efforts to get the emails to stop.

94. Additionally, on information and belief, each of the Defendants engaged in dictionary attacks, used scripts or other automated means to created sender and recipient email

addresses, and engaged in relaying and retransmitting in violation of 15 U.S.C. §7704(b)(1), (2), and/or (3).

95. Accordingly, ZooBuh prays for treble damages of the total damage amount determined by this Court.

REQUEST FOR RELIEF

Plaintiff respectfully requests the following relief:

A. Entry of judgment in the amount of $100 per violation of 15 U.S.C. § 7704(a)(1) for a total damage award of up to $50,000.

B. Entry of judgment in the amount of $100 per violation of 15 U.S.C. § 7704(a)(1)(A) for a total damage award of up to $730,000.

C. Entry of judgment in the amount of $25 per violation of 15 U.S.C. § 7704(a)(2) for a total damage award of up to $20,800.

D. Entry of judgment in the amount of $25 per violation of 15 U.S.C. § 7704(a)(4) for a total damage award of up to $187,500.

E. A total base damage award of up to $988,300.

F. Treble damages pursuant to 15 U.S.C. § 7706(g)(3).

G. Attorneys' fees and costs pursuant to 15 U.S.C. § 7706(g)(4).

H. Pre and post-judgment interest at the highest rate permitted by law.

I. Entry of permanent injunction against each Defendant prohibiting each Defendant from sending or causing to be sent email message to ZooBuh and its customers.

J. All other relief deemed just in law or equity by this Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable of right in this action, pursuant to Rule 38(b), Federal Rules of Civil Procedure.

DATED this 5th day of May, 2014.

DURHAM, JONES & PINEGAR, P.C.


/s/ Jordan K. Cameron
Wm. Kelly Nash
Jordan K. Cameron
*Attorneys for Plaintiff*

Plaintiff's Address:
P.O. Box 41
American Fork, Utah 84003